Gerard and Gemma BRAULT, Plaintiffs-Appellants,

v.

TOWN OF MILTON, Defendant-Appellee.

No. 555, Docket 74–2370.

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1975.

Decided Feb. 24, 1975.

Submitted May 26, 1975.

On Rehearing En Banc Oct. 1, 1975.

Gilbert T. Normand, John A. Burgess, John A. Burgess Associates, Ltd., Montpelier, Vt., for plaintiffs-appellants, Gerard and Gemma Brault.

Matthew I. Katz, Latham, Eastman, Schweyer & Tetzlaff, Burlington, Vt., for defendant-appellee.

W. Bernard Richland, Corp. Counsel, New York City (L. Kevin Sheridan, Michael Ambrosio, New York City, of counsel), for amicus curiae.

Burt Neuborne, New York City (Lawrence G. Sager, Melvin L. Wulf, American Civil Liberties Union, New York City, Richard Kohn, Vermont Civil Liberties Union, Montpelier, Vt., of counsel), for amici curiae.

· OPINION OF THE PANEL

Before SMITH, OAKES and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

██ Gerard and Gemma Brault initiated suit against the Town of Milton, Vermont, in the United States District Court for the District of Vermont to recover damages for the Town's alleged infringement of their property rights under the Due Process Clause of the federal Constitution's Fourteenth Amendment. On the defendant's pretrial motion, the court, Albert W. Coffrin, Judge, dismissed the complaint on October 8, 1974, for failure to state a claim on which relief may be granted. Fed.R. Civ.P. 12(b)(6). The court held in its one-sentence order that 42 U.S.C. § 1983,[1] cited by the plaintiffs in their complaint as creating a cause of action, does not authorize a suit ·against the Town because a municipality is not a "person" for purposes of the statute's designation of potential defendants. On appeal the Braults concede, and quite correctly,[2] the validity of this rationale. They do take issue, however, with the court's failure to recognize an alternative theory contained in their complaint: that the Fourteenth Amendment itself gives rise to a claim for relief based upon its violation, and that the district court has federal question jurisdiction, 28 U.S.C. § 1331(a),[3] over any such claims where the amount in controversy exceeds $10,000. We agree that the appellants have stated a cause of action for which the United States Constitution authorizes that relief may be granted. In ruling on the Town's motion to dismiss, the district court was obliged to accept the plaintiffs' representation that the amount in controversy exceeded the jurisdictional minimum prescribed by 28 U.S.C. § 1331(a). The district court therefore erred in dismissing the complaint in the .absence of any showing that the amount in controversy was not as alleged. We reverse the court's order dismissing the complaint and remand for trial.

In May, 1967, the Town of Milton secured a temporary injunction prohibiting the Braults from using their land as a trailer park. The injunction was predicated on a zoning ordinance adopted by the Town's voters in the same year. In 1971, the Vermont Supreme Court vacated the injunction (made permanent in 1969) because the vote adopting the ordinance was taken at a town meeting of which those eligible to vote had not received adequate notice. Town of Milton v. Brault, 129 Vt. 431, 282 A.2d 681 (1971).[4] On remand, the Chittenden County court awarded the Braults $86,-411 pursuant to 12 Vt.Stat.Ann. § 4447, which then provided:

> When an injunction in chancery is dissolved by final decree in favor of the defendant, he shall be entitled to recover his actual damages caused by the wrongful issuing of the injunction.

The Vermont Supreme Court held on appeal, however, that the municipality was immune from liability except to the extent that it waived such immunity by voluntarily filing an injunction bond. The Braults' recovery was thus limited

---

1. § 1983. Civil action for deprivation of rights

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. See City of Kenosha v. Bruno, 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973);

Monroe v. Pape, 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

3. § 1331. Federal question; amount in controversy; costs

 (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

4. The basis for the Vermont Supreme Court's decision is set forth in a companion case, Town of Milton v. LeClaire, 129 Vt. 495, 282 A.2d 834 (1971).

to the amount of the bond, or $500. Town of Milton v. Brault, 132 Vt. 377, 320 A.2d 630 (1974).

 Soon after the Vermont Supreme Court denied their motion for reargument, the Braults filed in federal district court the suit now before us. In this suit they alleged for the first time that their federal constitutional rights had been violated:[5]

> 10. The acts of Defendant Town in obtaining and maintaining the injunction is referred to under a zoning ordinance that they knew, or should have known, to be invalid, deprived Plaintiffs of the use, enjoyment, profits and value of property without due process of law in contravention of the 14th Amendment of the Constitution of the United States [.]

The plaintiffs' argument, that they have a cause of action based directly on the Fourteenth Amendment's Due Process Clause and over which the court has jurisdiction under 28 U.S.C. § 1331, was not presented in the complaint with the utmost clarity:

> Jurisdiction

> 1. This is an action for damages under 42 U.S.C. § 1983 and this Court is vested with jurisdiction pursuant to 28 U.S.C. § 1331, the amount in controversy being in excess of $10,000.00 and the controversy arising under the Constitution and laws of the United States [.]

Admittedly, despite the later mention of due process rights in paragraph 10 of the complaint, quoted *supra*, the complaint may at first glance appear to be stating only a single cause of action—one under 42 U.S.C. § 1983. Closer examination, however, would reveal that the plaintiffs are also pursuing a separate claim for unconstitutional deprivation of property with jurisdiction based on 28 U.S.C. § 1331. First of all, the complaint mentions only one jurisdictional provision (28 U.S.C. § 1331) and that provision is not the one implementing the cause of action created by 42 U.S.C. § 1983 (*see* 28 U.S.C. § 1343[6]). Secondly, if the only cause of action were one based on § 1983, the complaint's assertion of more than $10,000 in controversy would be irrelevant because § 1983 suits may proceed regardless of the amount in controversy. Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); Douglas v. City of Jeannette, 319 U.S. 157, 161, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). The artlessness of the complaint's draftsmanship notwithstanding, "substantial justice" required that the district court take cognizance of the plaintiffs' § 1331-related theory of relief. Fed.R.Civ.P. 8(f); 2A J. W. Moore, Federal Practice ¶ 8.34 (2d ed. 1974). At the outset, then, we reject the appellee's contention that the appellants are precluded from pursuing this theory on appeal by their alleged failure to raise it first in the court below.

---

**5.** The Braults are not barred by *res judicata* from raising this constitutional claim in federal court after state court proceedings in which it might have been litigated but was not. Although Newman v. Board of Education, 508 F.2d 277 (2d Cir. 1975) (per curiam), and Lombard v. Board of Education, 502 F.2d 631 (2d Cir. 1974), decided this issue in the context of § 1983 actions, the holding in *Lombard* expressly assimilated to its rationale suits involving an "independent supplementary cause of action like an action under the Civil Rights Act [*i. e.*, § 1983]." *Id.* at 637. Since the instant claim plainly meets this description, we follow *Lombard* and *Newman* in finding no bar in the prior state proceedings to the present litigation in the federal courts of a constitutional claim not already decided.

**6.** § 1343. Civil rights and elective franchise

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

* * * * * *

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

In holding that the plaintiffs' complaint states a cause of action stemming from the Due Process Clause of the Fourteenth Amendment, we are guided by the Supreme Court's decision in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The plaintiff Bivens alleged that federal narcotics agents acting under color of federal law illegally entered and searched his apartment and manacled and arrested him for supposed narcotics violations. As in the instant case, only 42 U.S.C. § 1983 ·was cited in the complaint's jurisdictional statement as creating the cause of action. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 276 F.Supp. 12, 13 (E.D.N.Y.1967). This provision was obviously inapplicable, however, for its scope is very expressly limited to deprivations of federal rights under color of *state* or *territorial* law. The district court so held, *id.* at 13–14, but it went on to find, on the basis of the complaint's reliance on 28 U.S.C. § 1331 (as well as 28 U.S.C. § 1343) and allusion to a violation of "constitutional rights," that Bivens was also resting his suit for damages directly on the Fourth Amendment with its prohibition against "unreasonable searches and seizures." The court rejected this latter claim, though, as lacking both a substantive source and jurisdictional basis. *Id.* at 14–16. As the Court of Appeals indicated, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 409 F.2d 718, 719–20 (2d Cir. 1969), the district court's alternative, jurisdictional ground for dismissing the Fourth Amendment-based claim ran afoul of Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), which established that federal courts have federal question jurisdiction over a cause of action arising out of the Constitution. This court agreed, on the other hand, with the district court's resolution of the issue not reached in *Bell*: whether a cause of action based on a provision of the Constitution was one upon which relief could be granted. *Id.* at 720–26, 66 S.Ct. 773.

In reversing, the Supreme Court addressed itself only to the viability of causes of action predicated on the Fourth Amendment. The *Bivens* Court stated its rationale for upholding the complaint against a motion to dismiss, however, in terms inviting broader application:

Of course, the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation. But "it is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue·for such invasion, federal courts may use any available remedy to make good the wrong done." Bell v. Hood, 327 U.S., at 684, 66 S.Ct., at 777 . . . The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts. [Citations omitted] . . . "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." Marbury v. Madison, 1 Cranch 137, 163, 2 L.Ed. 60 (1803).

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396–97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We conclude, therefore, that the Braults' invocation of the Fourteenth Amendment's Due Process Clause as the source of their claim for relief comes within *Bivens'* sweeping approbation of constitutionally-based causes of action.

As the Court in *Bivens* indicated, however, the adjudication of some claims rooted in the Constitution may be precluded by "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 396, 91 S.Ct. at 2005. In the case now before us, the appellee has brought to the court's attention only one potential "special factor": the defendant is a municipality.

Since Congress excluded municipalities from the scope of 42 U.S.C. § 1983,[7] Monroe v. Pape, 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), it may be argued that courts should be slow to infer that Congress meant in later enacting 28 U.S.C. § 1331 [8] to provide an alternative device to sue municipalities for violations of federal rights. *See* Perzanowski v. Salvio, 369 F.Supp. 223, 230 (D.Conn.1974). If a construction of § 1331 as authorizing such suits would render meaningless the immunity enjoyed by municipalities under § 1983, we might find this argument more persuasive. This is not in fact the case, however, for § 1331, with its amount in controversy requirement,[9] would preserve the municipality's § 1983 immunity as to actions not involving this minimum sum; suits based on § 1983, it will be remembered, *see supra*, need not satisfy an amount in controversy requirement. Bell v. Hood and *Bivens* itself, moreover, caution against assuming that Congress' exemption for municipalities under § 1983 informed its efforts four years later in establishing federal question jurisdiction. For while Congress placed suits against federal officials beyond the scope of § 1983 with no less—and, indeed, probably far more—clarity than it proscribed suits against municipalities, the Court in these two cases confirmed that § 1331 vested federal jurisdiction over civil rights actions against federal officers. We reject the view, therefore, that municipalities enjoy any special status which would immunize them from suits to redress deprivations of federal constitutional rights. *See* City of Kenosha v. Bruno, 412 U.S. 507, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) (concurring opinion of Brennan & Marshall, JJ.);[10] Dupree v. City of Chat-tanooga, 362 F.Supp. 1136, 1138–39 (E.D. Tenn.1973); Dellinger, Of Rights and Remedies: The Constitution as a Sword, 85 Harv.L.Rev. 1532, 1558–59 (1972).

The plaintiffs have stated a cause of action under the Due Process Clause of the Fourteenth Amendment for which relief may be granted. We therefore reverse the district court's dismissal of the complaint and remand for trial.

Reversed and remanded.

TIMBERS, Circuit Judge (dissenting):

With deference, I respectfully decline to join in the majority's discovery of a federal cause of action for damages against a municipality springing directly from the due process clause of the Fourteenth Amendment.

Despite the majority's ingenuity in suggesting that such a cause of action may be supported by what it characterizes as the "sweeping approbation of constitutionally-based causes of action" which the majority finds in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396–97 (1971), it seems to me that the majority has minimized the admonition of the Supreme Court that constitutionally derived remedies should not be lightly implied where Congress has expressed a contrary intent. 403 U.S. at 396, 397. There is present in the instant case precisely that "affirmative action by Congress", 403 U.S. at 396, counselling hesitation which was absent in *Bivens.*

The Supreme Court has held that Congress, in implementing the Fourteenth Amendment through enactment of 42 U.S.C. § 1983 (1970) and its predecessors, specifically intended to exempt municipalities from liability in damages for vio-

---

7. Municipalities do not share the states' Eleventh Amendment immunity. Workman v. New York City, Mayor, Aldermen and Commonalty, 179 U.S. 552, 565, 21 S.Ct. 212, 45 L.Ed. 314 (1900).

8. 42 U.S.C. § 1983 derives from the Act of April 20, 1871, ch. 22, § 1, 17 Stat. 13. The precursor of 28 U.S.C. § 1331(a) is the Act of March 3, 1875, ch. 137, § 1, 18 Stat. 470.

9. The original $500 threshold has been increased in several steps to the present $10,-000.

10. Although the Court in *City of Kenosha, supra,* did not decide this issue, its discussion of jurisdiction under § 1331 may intimate that it shares the concurring justices' broad view of constitutionally-founded causes of action. *See City of Kenosha, supra,* 412 U.S. 507 at 514.

lations of the Fourteenth Amendment. Monroe v. Pape, 365 U.S. 167, 187–92 (1961); see City of Kenosha v. Bruno, 412 U.S. 507, 512–13 (1973). The majority's holding today that creates such liability stemming directly from the Fourteenth Amendment strikes me as wholly ignoring this Congressional intent. Cf. Perzanowski v. Salvio, 369 F.Supp. 223, 229–31 (D.Conn.1974) (Clarie, Chief Judge).

Such holding, virtually of first impression, surely will work mischief in every municipality in the land.

I respectfully but most emphatically dissent.

Before KAUFMAN, Chief Judge, and SMITH, FEINBERG, MANSFIELD, MULLIGAN, OAKES, TIMBERS, GURFEIN, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MANSFIELD, Circuit Judge:

Gerard and Gemma Brault brought suit against the Town of Milton, Vermont, in the United States District Court for the District of Vermont, seeking damages under the Civil Rights Act of 1871, 42 U.S.C. § 1983,[1] on their claim that the Town had deprived them of their property rights without due process in violation of the Fourteenth Amendment. The district court, Albert W. Coffrin, *Judge,* granted the Town's motion to dismiss the complaint on the ground that § 1983 does not apply to the Town, a municipality, citing *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Upon appeal the Braults contend that they are entitled to base their damage suit directly on the Fourteenth Amendment. In view of the importance of that issue we decided, following a decision by a panel of this court, to grant appellee's application for a rehearing of the appeal *en banc* and on April 17, 1975, an order was accordingly entered. However, upon further examination of the record we find it unnecessary to resolve the Fourteenth Amendment and several other issues raised by the parties for the reason that the complaint, even when liberally construed in the Braults' favor, must be dismissed for failure to state a claim entitling them to relief.

The present case arises out of litigation between the same parties in the Vermont state courts, in which the Town sought to enjoin the Braults from building a mobile home park in violation of a zoning ordinance. The heart of the Braults' present claim is stated in the complaint as follows:

"10. The acts of Defendant Town in obtaining and maintaining the injunction is referred to under a zoning ordinance that they knew, or should have known, to be invalid, deprived Plaintiffs of the use, enjoyment, profits and value of property without due process of law in contravention of the 14th Amendment of the Constitution of the United States;"

The undisputed background of the foregoing allegation, as set forth in decisions of the Vermont Supreme Court, is that in May, 1967, the Town temporarily succeeded in enforcing a recently adopted zoning ordinance by filing suit against the Braults in the Chittenden County Court of Chancery, State of Vermont, and obtaining the issuance by that court of a temporary injunction restraining the Braults from constructing a mobile home park on their land.

The injunction was granted, after notice and an evidentiary hearing, on the basis of findings made by the Chancellor. It became permanent in 1969. Upon appeal the Vermont Supreme Court held the zoning ordinance invalid because of

---

1. Federal jurisdiction is invoked under 28 U.S.C. § 1331, the complaint alleging that the amount in controversy exceeds $10,000. Since plaintiffs have drawn their complaint so as to seek recovery under the Constitution and laws of the United States, this court has jurisdiction to hear the case, even if the complaint ultimately fails to state a claim. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

procedural[2] defects in its adoption, *Town of Milton v. Brault*, 129 Vt. 431, 282 A.2d 681 (1971); *Town of Milton v. LeClaire*, 129 Vt. 495, 282 A.2d 834 (1971). Accordingly it dissolved the injunction and remanded the case to the county court for the purpose of assessing damages pursuant to the injunction bond and a Vermont "injunction damages" statute, 12 V.S.A. § 4447,[3] which provided that, upon dissolution of an injunction by final decree in favor of a defendant, the latter may recover his actual damages caused by the wrongful issuance of the injunction.

Upon remand the county court awarded the Braults $86,411. Upon a second appeal the Vermont Supreme Court reduced the award to $500, which was the amount of the injunction bond posted by the Town, on the ground that the Town as a municipality was entitled to immunity from liability for its good faith enforcement of zoning ordinances except to the extent that it had waived its immunity by purchasing insurance, or posting an injunction bond, in this case $500.[4] *Town of Milton v. Brault*, 132 Vt. 377, 320 A.2d 630 (1974). The court characterized the Town's action as a "good faith, albeit subsequently wrongful, enforcement of its zoning ordinances." 132 Vt. at 379, 320 A.2d at 632. Upon rear-

gument, the Vermont Supreme Court adhered to its decision, further holding that, in addition to the Town's immunity, the zoning administrator of the Town was protected against liability for performance of duties that were judicial or quasi-judicial in nature, citing *Nadeau v. Marchessault*, 112 Vt. 309, 313, 24 A.2d 352 (1942).

Having succeeded in recovering only $500 in the Vermont state court proceeding, the Braults commenced the present damage action in the United States District Court for the District of Vermont. The Town promptly moved pursuant to Rule 12(b)(6), Fed.R.Civ.P. for dismissal of the Braults' complaint on several different grounds: (1) that the judgment in the Vermont state courts, being between the same parties with respect to the same claim, precluded the Braults from asserting their present claim; (2) that the Town was not a "person" within the meaning of 42 U.S.C. § 1983; (3) that the Town's invocation of the state's judicial process to enforce its ordinance did not violate any right granted under § 1983 or the Fourteenth Amendment; (4) that the Town was immune from liability because it acted in a prosecutorial or quasi-prosecutorial role in seeking to enforce the ordinance, which was within the sphere of its legitimate legislative

2. The text of the warning of the town meeting called to vote on the adoption of the zoning ordinance, which was mailed to voters and published in local newspapers, failed to contain the title of the zoning plan, the date of its adoption by the Town's board of selectmen, and the location in the town where it was posted, as required by 24 V.S.A. § 3004(c). *Town of Milton v. LeClaire*, 129 Vt. 495, 282 A.2d 835 (1971). However, the plan went into effect and at a later town meeting a petition of voters to rescind the ordinance failed of adoption. 129 Vt. at 498, 282 A.2d at 836. Conceding that the "omissions in the warning are of a procedural nature," the Vermont Supreme Court nevertheless held "that strict compliance with the required procedures is the rule if a municipality is to have the right to exercise zoning authority," 129 Vt. at 499, 282 A.2d at 836.

3. Prior to 1971, 12 V.S.A. § 4447 provided: "When an injunction in chancery is dissolved by final decree in favor of the defend-

ant, he shall be entitled to recover his actual damages caused by the wrongful issuing of the injunction which shall be ascertained by reference to a master."

4. 29 V.S.A. § 1403 provides:

§ 1403. Waiver of immunity by state, municipal corporations and counties

When the state or a department or board purchases a policy of liability insurance under the provisions of section 1401 of this title, and when a municipal corporation purchases a policy of liability insurance under section 1092 of Title 24, and when a county purchases a policy of liability insurance under the provisions of section 131 of Title 24, it waives its sovereign immunity from liability to the extent of the coverage of the policy and consents to be sued.—Added 1959, No. 328 (Adj. Sess.), § 14.

activity and (5) that the Town's initiation of civil proceedings to enforce its ordinance, being insufficient to render a private person liable for wrongful use of process, was insufficient to state a violation of § 1983 or the Fourteenth Amendment.[5]

## DISCUSSION

■ The Braults do not seriously question the validity of the district court's holding that as a municipality the Town of Milton cannot be held in damages under § 1983, *Monroe v. Pape, supra.* However, they seek to avoid the impact of that decision by urging that, regardless of § 1983, their damage suit must be upheld on the ground that it is derived directly from the Fourteenth Amendment itself. In support of the validity of such a constitutionally-based claim they cite *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and the concurring opinions of Justices Brennan and Marshall in *City of Kenosha v. Bruno,* 412 U.S. 507, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); see also Dellinger, *Of Rights and Remedies: The Constitution as a Sword,* 85 Harv.L. Rev. 1532, 1558 (1972). The Town, on the other hand, while not abandoning any of the other grounds urged by it below, contends that municipalities are immune from suits for damages, whether based on § 1983 or directly on the Fourteenth Amendment, and that in any event the Braults are precluded on grounds of *res judicata* from pursuing their present damage claims since they

chose, following the Vermont Supreme Court's dissolution of the injunction against them, to have their claim adjudicated by the state courts, where the Town's immunity was upheld.

Interesting as these questions are, we find it unnecessary to resolve them for the reason that the complaint fails to state a claim entitling the plaintiffs to relief, regardless of the theory upon which the action is based. Until a plaintiff has set forth a short and simple statement of facts indicating some plausible basis for relief, any discussion of other possible barriers on his road to relief is superfluous. Assuming that a suit for damages can be founded directly on the Fourteenth Amendment, a question we do not here decide, the allegations made by the Braults, even given the liberal construction mandated by the principles underlying "notice pleading," do not demonstrate any basis for a claim that their rights under that Amendment have been violated.

■ The gist of the Braults' complaint is that the Town violated their due process rights by invoking the processes of the Vermont state courts to enforce an ordinance which turned out to be invalid. Absent a claim of malice—and no such claim is stated here—a plaintiff's use of judicial process for enforcement of an alleged right is the very antithesis of denial of due process. The court's function is to assure that no party will be deprived of property without satisfying the fundamentals of due process, including the requirement that the defendant be furnished with notice and a statement of the claim against him and

5. Under Local Rule 9 of the United States District Court for the District of Vermont the Braults, upon being served with the Town's motion and memorandum stating its legal contentions and authorities, were required, if they desired to oppose the motion, to file within 10 days a brief or memorandum stating their contentions. The Rule further provides that "in the absence of an opposing memorandum, the motion shall be deemed unopposed and shall be considered without argument."

After being served with the Town's motion and supporting memorandum the Braults did not respond and their complaint was dismissed

without oral argument. Thereafter they served and filed a memorandum in opposition to the motion to dismiss. However, their failure, before filing a notice of appeal one week after the district court's decision, to move for reargument or reconsideration, raises a serious doubt as to whether we should in any event consider questions that were not raised in timely fashion in the district court. See *McGrath v. Manufacturers Trust Co.,* 338 U.S. 241, 70 S.Ct. 4, 94 L.Ed. 31 (1949); *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

the opportunity to prepare and present a defense, a hearing, the right to confront and cross-examine witnesses, and findings. *Groppi v. Leslie,* 404 U.S. 496, 500–501, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972). It is undisputed that all of these requirements were met in the Town's suit against the Braults, which resulted in findings and an order by the Chancellor of the Chittenden County Court upholding and enforcing the zoning ordinance in dispute. That decision, it is true, was later found by the Vermont Supreme Court to be erroneous because of procedural defects in the adoption of the zoning ordinance in issue. However, the Fourteenth Amendment does not protect a litigant against judicial error, *Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948). Thus, none of the proceedings in the Vermont courts denied the Braults due process of law. And if the Braults' rights under the Due Process clause were not violated in the Vermont courts, the Town could not have violated their due process rights by bringing them into those courts. If every unsuccessful lawsuit were to be viewed as a violation of due process, bona fide litigants would be deterred from invoking the courts to adjudicate their claims, since a plaintiff would risk substantial damages if his claim should not be upheld. Not even the courts of England which, unlike our own, impose very substantial costs upon the unsuccessful litigant, have permitted recovery of damages for a civil suit brought in good faith; indeed, they have been reluctant to impose any liability at all for wrongful institution of civil proceedings. See *Cotterell v. Jones,* 11 C.B. 713, 138 Eng.Rep. 655 (1851); *Quartz Hill Gold Min. Co. v. Eyre,* 11 Q.B.D. 674 (1883). A number of American states likewise refuse to impose such liability or strictly limit it. See, e. g., *La Salle National Bank v. 222 East Chestnut St. Corp.,* 267 F.2d 247 (7th Cir.), *cert. denied,* 361 U.S. 836, 80 S.Ct. 88, 4 L.Ed.2d 77 (1959) (Illinois law); *Ring v. Ring,* 102 R.I. 112, 228 A.2d 582 (1967).

The only exception which some states have made to the general rule that a person may not be held to respond in damages for instigation of civil litigation is where the party presently sued (1) had no probable cause to believe in the merits of his earlier lawsuit and (2) acted with malice in instituting the original suit. *Stewart v. Sonneborn,* 98 U.S. 187, 25 L.Ed. 116 (1878); *Northern Oil Co. v. Socony Mobil Oil Co.,* 347 F.2d 81 (2d Cir. 1965) (diversity suit based upon issuance of an injunction *pendente lite* by Vermont Court); *Masi v. Laferrieri,* 131 Vt. 363, 306 A.2d 701 (1973); *Powell v. Woodbury,* 85 Vt. 504, 83 A. 541 (1912); *Carleton v. Taylor,* 50 Vt. 220 (1877); *Closson v. Staples,* 42 Vt. 209 (1869); *Restatement of Torts,* § 674; W. Prosser, *Torts,* § 120 (4th ed. 1971). The essential elements of such a claim were summed up by the Supreme Court in *Crescent City Live Stock Co. v. Butchers' Union Slaughter-House Co.,* 120 U.S. 141, 7 S.Ct. 472, 30 L.Ed. 614 (1887) as follows:

"Want of probable cause, and the existence of malice, either express or implied, must both concur to entitle the plaintiff in an action for a malicious prosecution to recover." *Id.* at 149, 7 S.Ct. at 476.

■■ The complaint here alleges that the Town, in obtaining the injunction, acted "under a zoning ordinance that they [presumably the Town] knew, or should have known, to be invalid". Although this allegation might suffice to claim lack of probable cause, it fails completely to allege malice. To be sure, the "malice" required as an element of the claim is a term of art. "The 'malice' that lies at the basis of the action does not necessarily involve spite, hatred, malevolence, or a corrupt design; it is sufficiently established by showing that the baseless suit was instituted from any improper and wrongful motive." *Sparrow v. Vermont Savings Bank,* 95 Vt. 29, 33, 112 A. 205, 207 (1921).[6] The requirement

**6.** Though a jury in a malicious prosecution suit may be entitled to infer the existence of

the requisite malice from the same evidence used to establish probable cause, see *Sparrow*

of "malice" could possibly be met by alleging that the defendant, in filing his original suit, acted from a motive other than securing adjudication of his claim, see *W. Prosser, supra,* § 120 at 855, but not even the most generous reading of the Braults' complaint reveals any allegation that the Town acted from any motive other than to enforce the zoning ordinance. Furthermore, the Vermont Supreme Court's repeated characterization of the Town's injunction suit as having been brought "in good faith" and the county court's initial grant of injunctive relief are inconsistent with a claim of malice or bad faith. See *Stewart v. Sonneborn, supra.*

While these requirements for maintaining a common law malicious prosecution suit, time-honored though they are, do not bind us in determining whether the plaintiffs have stated a claim for violation of their Fourteenth Amendment rights, see *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, supra,* 403 U.S. at 392–395, 91 S.Ct. 1999, the experience of the common law is nonetheless a valuable source of instruction in arriving at minimum standards for imposition of liability based essentially on tortious conduct, whether or not it be labelled as a violation of a "constitutional" or some other right. Indeed, in *Tucker v. Maher,* 497 F.2d 1309 (2d Cir. 1974), we held that a plaintiff suing under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for damages caused by the enforcement of unconstitutional state lien and attachment statutes must establish the elements of malicious prosecution, i. e., "that the civil proceedings were initiated without probable cause and primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings were based." (497 F.2d at 1315). The obvious policy in favor of encouraging resort to the courts would hardly be furthered by imposition of liability without fault, which would only serve to deter bona fide litigants with meritorious claims from seeking judicial relief.

■■■ Even if we were to assume that, regardless of the non-existence of a claim of malice or of some purpose on the part of the Town other than enforcement of its ordinance, one damaged as the result of the erroneous issuance of an injunction should be entitled to damages from the person who obtained it, the Braults' inability to recover in the present case clearly did not arise, as claimed, from a denial of due process in the Town's injunction suit against them. Rather it arose from the fact that under Vermont law a municipality is immune from liability (including that for damages caused by wrongful issuance of an injunction) as authorized by 12 V.S.A. § 4447 except to the extent that the immunity is waived by purchase of liability insurance, 29 V.S.A. § 1403. However, since the Braults' complaint cannot be construed, even by the wildest stretch of imagination, as attacking this sovereign immunity or as claiming that the immunity is inapplicable,[7] we are left

---

*v. Vermont Savings Bank, supra,* 95 Vt. at 33, 112 A. at 207, the possibility of making such an inference does not remove malice as an essential element of the claim. If the Braults' allegation that the Town "knew or should have known" of the invalidity of the ordinance were to be accepted as a sufficient allegation of malice to state a claim, the effect would be to eradicate this careful distinction between malice and probable cause, and make the two synonymous as a matter of law. The requirement that plaintiffs make allegations of malice in order to state a claim such as the one the Braults attempt to assert is hardly likely to prove burdensome to those plaintiffs who have meritorious claims based upon wrongful institution of civil actions. "Malice, intent, knowl-

edge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

7. The Braults' plea to the Vermont Supreme Court for abolition of the doctrine of sovereign immunity was rejected, that court stating:

"The defendants urge this Court to join other states which have abolished the doctrine of sovereign immunity. This doctrine was created by the judiciary and the defendants assert that '[t]he judicial branch of government need not call to, or wait upon, the legislative branch to change a rule of law which the judicial branch itself created.' *Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599 (Mo.1969).

with a complaint that simply fails to state a claim for relief. Accordingly the district court's decision is affirmed.

FEINBERG, Circuit Judge (concurring):

The majority opinion does not decide whether, as the dissent urges, there can be a cause of action based directly on the due process clause of the fourteenth amendment. Even assuming that the dissent is correct on this issue, I nevertheless agree with the last paragraph of the majority opinion that under the Vermont doctrine of sovereign immunity, the Braults cannot recover more than they have already recovered in the state courts. Since the complaint does not attack the constitutionality of applying that doctrine, it does not state a cause of action for violation of fourteenth amendment rights.

I therefore concur in the result reached by the majority.

OAKES, Circuit Judge (dissenting), with whom Circuit Judge J. JOSEPH SMITH joins:

A majority of our court has voted to reverse a panel decision which would have given direct relief under the Fourteenth Amendment to the victims of an injunction obtained by a municipality under an illegal zoning act. It does so on the theory that the complaint fails to state a claim for relief under the Fourteenth Amendment. In the majority's view the plaintiffs' claim is based on the Town's non-malicious use of judicial process for enforcement of its zoning ordinance. They therefore do not reach

the underlying questions of substantive liability and municipal immunity under the Fourteenth Amendment.

By dismissal, it seems to us the majority sidesteps the allegations in the Braults' complaint that "The acts of Defendant Town in obtaining and maintaining the injunction . . . under a zoning ordinance that they knew, or should have known, to be invalid, deprived Plaintiffs of the use, enjoyment, profits and value of property without due process of law in contravention of the 14th Amendment of the Constitution of the United States." A clearer pleading of the Fourteenth Amendment claim would be hard to imagine. Thus, what the majority here describes as a failure to state a claim is in reality an adjudication on the merits that the Constitution affords no remedy to persons deprived of property by the incorrect application of state judicial authority.

It is inconceivable that a state could constitutionally authorize the taking or expropriation of property without just compensation, even if it did so after providing a hearing and all of the other procedural rights which are imbedded in the concept of due process. Taking property, whether by the United States, *Jacobs v. United States,* 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933); *Seaboard Air Line Railway Co. v. United States,* 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923), by a state, *Chicago, Burlington & Quincy Railroad Co. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897), by a county, *Griggs v. Allegheny County,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), or by a municipality, *Haczela v.*

"However, in the nearby jurisdictions cited by defendants, the courts pointed out that the legislative silence on the issue did not hinder their decisions. These courts were not faced with definite legislative approval of the doctrine of sovereign immunity, as is this Court. . . .

"Furthermore, we find the reasoning in various New Jersey cases very persuasive support for the proposition that, even if our Legislature had not spoken, the good faith action of this plaintiff should not beget liability beyond the amount of the injunction bond.

" 'The power of a municipality to adopt zoning regulations pursuant to statutory authority is an essential aspect of the police power. The governing body must be free to exercise that power in good faith to amend or alter its zoning regulations when it determines the public interest so requires.' *Veling v. Borough of Ramsey,* 94 N.J.Super. 459, 228 A.2d 873 (1967)."
*Town of Milton v. Brault,* 132 Vt. at 380, 320 A.2d at 632–33.

*City of Bridgeport,* 299 F.Supp. 709 (D.Conn.1969), requires just compensation. This, of course, is a direct result of the Fifth Amendment provision that "private property [not] be taken for public use without just compensation,"[1] which is incorporated into the Fourteenth Amendment protection against deprivation of property by a state without due process of law. *Chicago, Burlington & Quincy Railroad Co. v. Chicago, supra.*[2] With the greatest of respect it appears to us that our brethren have overlooked this basic substantive restraint on state authority in their narrow investigation for procedural regularity in the taking involved in this case.[3]

We take it that the majority would agree with us, though it does not mention the point, that property can be taken as effectively by a zoning ordinance (or judicial enforcement of it) as by an eminent domain law. As the Court said in *Chicago, Burlington & Quincy Railroad Co. v. Chicago, supra.*

> The mere form of the proceeding instituted against the owner, even if he be admitted to defend, cannot convert the process used into due process of law, if the necessary result be to deprive him of his property without compensation.

166 U.S. at 236–37, 17 S.Ct. at 584. Zoning ordinances are after all "in derogation of common-law property rights"[4]

and they may act to deprive a landowner of so much of the use of his property as to amount to a taking. *Arverne Bay Construction Co. v. Thatcher,* 278 N.Y. 222, 15 N.E.2d 587 (1938); R. Anderson, American Law of Zoning § 2.13, at 64 (1968); 2 Nichols, Eminent Domain § 6.1[3] (3d ed. 1970); Ellickson, *Alternatives to Zoning: Covenants, Nuisance Rules, and Fines as Land Use Controls,* 40 U.Chi.L.Rev. 681, 699 n. 65 (1973). *Cf. Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922). In this case we do not even have a valid ordinance which merely has the innocent effect of constituting a taking. Rather here we have an *invalid* ordinance which was enforced over protest and resulted in damage to these appellants in the amount of $86,411.

Apparently the majority feels that because the Town used the judicial process to enforce its ordinance, by obtaining an injunction from a Vermont county court, the act of taking is clothed with due process of law. In its view, "a plaintiff's use of judicial process for enforcement of an alleged right is the very antithesis of denial of due process." This linguistically appealing notion, however, neglects the teachings of *Chicago, Burlington & Quincy Railroad Co. v. Chicago, supra:*

> In our opinion, a judgment of a state court, even if it be authorized by

---

1. The suits were based on the right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent domain. That right was guaranteed by the Constitution. The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty to pay imposed by the amendment. The suits were thus founded upon the Constitution of the United States.

 *Jacobs v. United States,* 290 U.S. 13, 16, 54 S.Ct. 26, 27, 78 L.Ed. 142 (1933).

2. Before the Fourteenth Amendment, the right to just compensation was *not* secured against state action by the Fifth Amendment provi-

sion. *Barron v. Baltimore,* 32 U.S. (7 Pet.) 243, 8 L.Ed. 672 (1833).

3. We are by no means so unsophisticated as to suggest that an eminent domain proceeding as such requires some kind of procedural due process different from that otherwise guaranteed by law. *Roberts v. New York City,* 295 U.S. 264, 55 S.Ct. 689, 79 L.Ed. 1429 (1935).

4. *Town of Milton v. LeClaire,* 129 Vt. 495, 498, 282 A.2d 834, 836 (1971). It is for this reason that zoning laws are construed in Vermont to require substantial compliance with procedural requirements in their enactment, *Town of Charlotte v. Richter,* 128 Vt. 270, 271, 262 A.2d 444, 445 (1970). The very zoning ordinance here involved was invalid under Vermont law for lack of due "warning" or proper notice to the voters as required by statute. *Town of Milton v. LeClaire, supra,* 129 Vt. at 498, 282 A.2d at 835; *Town of Milton v. Brault,* 129 Vt. 431, 282 A.2d 681 (1971).

statute, whereby private property is taken for the state or under its direction for public use, without compensation made or secured to the owner, is, upon principle. and authority, wanting. in the due process of law required by the fourteenth amendment of the constitution of the United States, and the affirmance of such judgment by the highest court of the state is a denial by that state of a right secured to the owner by that instrument.

166 U.S. at 241, 17 S.Ct. at 586. Thus, the fact that judicial procedure has been employed cannot immunize official action constituting a taking without just compensation.

The majority also concludes that the appellants have not alleged facts sufficient to state a claim of what they characterize as malicious use of process under the Fourteenth Amendment. It should be noted that the mere fact that an injunction was obtained does not, even under Vermont law, constitute a defense to an action for malicious prosecution. *Sparrow v. Vermont Savings Bank*, 95 Vt. 29, 112 A. 205 (1921) (temporary injunction in effect for several years); *Powell v. Woodbury*, 85 Vt. 504, 83 A. 541 (1912) (temporary injunction wrongfully secured gives rise to suit on injunction bond and for malicious prosecution). This is precisely what this court recognized in another case arising out of an injunction originally granted in the Vermont courts but subsequently dissolved, *Northern Oil Co. v. Socony Mobil Oil Co.*, 347 F.2d 81 (2d Cir. 1965), *opinion after remand*, 368 F.2d 384 (2d Cir. 1966).

Nor need we tarry at length over the majority view that "malice" was here insufficiently alleged to permit an action to lie. The majority's approach is grounded in the belief that the Fourteenth Amendment claim by the Braults here is analogous to one for malicious prosecution under state law, an analogy with which we by no means agree.[5] Assuming, however, that only the state tort constitutes a federal constitutional claim, the allegation that the Town acted "under a zoning ordinance that they [the Town and Town officials] knew, or should have known, to be invalid" was a sufficient statement of "malice" under Vermont law to state a claim of malicious prosecution. As *Sparrow v. Vermont Savings Bank, supra*, said:

> The want of a sincere belief in the legality of the proceedings is malice enough to support the action. *Barron v. Mason*, 31 Vt. 189. Under this rule, the institution in bad faith of an unfounded suit would be sufficiently malicious to support an action of this kind. This kind of malice has been here established by the verdict. This kind of malice may be inferred from the want of probable cause. *Barron v. Mason, supra; Closson v. Staples*, 42 Vt. 209, 1 Am.Rep. 316. Or, to state it otherwise, evidence of the want of probable cause may be, and often is, strong evidence of this kind of malice. *Driggs v. Burton*, 44 Vt. 124; *Carleton v. Taylor*, 50 Vt. 220.

95 Vt. at 33, 112 A. at 207.

Surely here if the Town or Town officials knew the ordinance had not been properly enacted they could not have had

---

5. This is an action under the federal Constitution. The state tort law seems not altogether relevant in this just compensation case. But even if the experience of the state common law has usefulness as a guide, *cf. Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), it can hardly be conclusive of federal constitutional rights. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392–95, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Rules of Decision Act makes this tolerably clear on its face. 28 U.S.C. § 1652. *See also* Note, *Choice of Law under Section 1983*, 37 U.Chi.L.Rev. 494 (1970); Note, *The Competence of Federal Courts to Formulate Rules of Decision*, 77 Harv.L.Rev. 1084 (1964); *Brazier v. Cherry*, 293 F.2d 401 (5th Cir.), *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961). In accepting, modifying and rejecting different defenses raised in a § 1983 action in *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Court looked at various sources of law without explaining its reason for choice. By doing so, the Court suggests that we are not tied to the state law in these cases.

a "sincere belief in the legality of the proceedings" brought to enforce the invalid ordinance. Thus, even if we were to accept the majority's theory that an action under the Fourteenth Amendment for just compensation for property taken by the State is analogous to an action for the state-law tort of malicious prosecution, and therefore an allegation of malice is required to plead the federal constitutional issue properly, we have such malice sufficiently alleged here under the federal rules of pleading, see Fed.R. Civ.P. 8(f), 9(b); 2A J. Moore, Federal Practice ¶ 8.34 (2d ed. 1974); 5 C. Wright & A. Miller, Federal Practice and Procedure §§ 1286, 1357. At the very least, if the Braults' allegations of malice are insufficient they should be permitted to replead since "[a]mendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." 5 C. Wright & A. Miller, supra § 1357, at 613 & cases cited. In this regard, it should be noted that the dismissal by the court below was based solely on its construction of the complaint as stating a claim only under 42 U.S.C. § 1983 (a conclusion with which, on that construction, we do not disagree).

In view of our belief that a direct cause of action under the Fourteenth Amendment was alleged giving rise to federal question jurisdiction under 28 U.S.C. § 1331(a), Home Telephone & Telegraph Co. v. City of Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), there is no need for us to add to what Judge Smith had to say in the panel opinion, Brault v. Town of Milton, 527 F.2d 731, 736 (1975). We only point out here that many cases have been cited to us by amicus ACLU which support the proposition that municipalities may be sued un-

der the Constitution even if they cannot be liable in a suit brought under 42 U.S.C. § 1983.[6] Hanna v. Drobnick, 514 F.2d 393 (6th Cir. 1975); Roane v. Callisburg Independent School District, 511 F.2d 633 (5th Cir. 1975); Muskegon Theatres, Inc. v. City of Muskegon, 507 F.2d 199 (6th Cir. 1974); Foster v. City of Detroit, 405 F.2d 138 (6th Cir. 1968); Miller v. County of Los Angeles, 341 F.2d 964 (9th Cir. 1965); Foster v. Herley, 330 F.2d 87 (6th Cir. 1964); Lowe v. Manhattan Beach City School District, 222 F.2d 258 (9th Cir. 1955); Dahl v. City of Palo Alto, 372 F.Supp. 647 (N.D. Cal.1974); Amen v. City of Dearborn, 363 F.Supp. 1267 (E.D.Mich.1973); Madison Realty Co. v. City of Detroit, 315 F.Supp. 367 (E.D.Mich.1970); Haczela v. City of Bridgeport, 299 F.Supp. 709 (D.Conn.1969).

As to the underlying substantive claim, we note only that our court's own decision in Matherson v. Long Island State Park Commission, 442 F.2d 566 (2d Cir. 1971), anticipated Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and the panel opinion here by holding that a direct claim under the Fourteenth Amendment for the taking of property was a substantial claim to which federal jurisdiction attaches. See also Eisen v. Eastman, 421 F.2d 560, 566–67 (2d Cir.), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). We adhere also to the view stated by Judge Smith in the original panel opinion that there was no claim preclusion here since the federal constitutional claim has not been litigated in the state court proceedings. Brault v. Town of Milton, supra, at 733 n.5.

We would, therefore, respectfully reverse.

---

**6.** We of course are bound by Monroe v. Pape, note 5 supra, despite its possibly erroneous reading of the legislative history. See Comment, Toward State and Municipal Liability in Damages for Denial of Racial Equal Protection, 57 Calif.L.Rev. 1142, 1164–69 (1969). The Senate amendments to the Civil Rights Act rejected by the House would have imposed liability upon municipalities for the acts of third parties within their borders, not for their own acts. See 1 B. Schwarz, Statutory History of the United States: Civil Rights 651–52 (1970).