Norman G. DONOGHUE, Plaintiff,

v.

Robert BEHLER et al., Defendants.

Civ. A. No. 76–1946.

United States District Court,
D. New Jersey.

March 25, 1977.

George J. Benson, Budd Lake, N. J., for plaintiff.

Ronald J. Maas, Vogel, Chait & Wacks, Morristown, N. J., for defendants.

STERN, District Judge.

Plaintiff, a former equipment operator in the Mt. Olive Township Road Department, sues the Mayor of Mt. Olive, the Supervisor of its Road Department, and the Township itself claiming, in short, that he was harassed and ultimately discharged from employment in retaliation for his efforts to unionize the Department. He seeks compensatory and punitive damages from the individual defendants, and reinstatement and back pay from the Township. The complaint alleges that "[t]his action arises under the First and Fourteenth Amendments to the Constitution . . . and under 42 U.S.C.A. §§ 1983 and 1985(3) . . .." Jurisdiction is invoked pursuant to 28 U.S.C. § 1343.

Defendant Township of Mt. Olive has moved to dismiss the complaint for failure to state a claim and/or for lack of subject matter jurisdiction. The Court heard oral argument on February 14, 1977 and reserved decision.

■ Recent Supreme Court decisions establish that no action against a municipality for money damages or for equitable relief may be maintained under § 1983 or § 1985 of the Civil Rights Act. A municipality is not a "person" within the meaning of that legislation. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1971). Clearly, plaintiff's Civil Rights Act claims against the Township must fall, and so must jurisdiction predicated on 28 U.S.C. § 1343. Plaintiff concedes as much.

He seeks, however, to avoid the result compelled by *Kenosha, Moor* and *Monroe* by requesting leave to amend his complaint to invoke this Court's federal question jurisdiction. Title 28 United States Code, § 1331 does indeed confer subject matter jurisdiction of a claim arising under the Fourteenth Amendment where, as here, more than $10,-000 is alleged to be at stake. See *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31, 44 (3rd Cir. 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *Hostrop v. Board of Junior College,* 523 F.2d 569, 577 (7th Cir. 1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976); *Brault v. Town of Milton,* 527 F.2d 730, 733, *rev'd on other grounds, id.* at 736 (2nd Cir. 1975) (*en banc*); *Construction Industry Ass'n of Sonoma County v. City of Petaluma,* 522 F.2d 897, 903 (9th Cir. 1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976); *Cox v. Stanton,* 529 F.2d 47, 50–51 (4th Cir. 1975); *Sixth Camden Corp. v. Township of Evesham,* 420 F.Supp. 709, 715–716 (D.N.J.1976); *Patterson v. City of Chester,* 389 F.Supp. 1093, 1905–1906 (E.D.Pa.1975); *Dahl v. City of Palo Alto,* 372 F.Supp. 647 (N.D.Cal.1974); *cf. City of Kenosha v. Bruno,* 412 U.S. 507, 513–514, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).

The more difficult question is whether this complaint states such a claim. The starting point for the analysis is *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Supreme Court held that federal law provides a remedy in the form of a damage action against federal officers for a search unconstitutional under the Fourth Amendment. The Court stated:

'[I]t is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.' *Bell v. Hood,* 327 U.S., at 684, 66 S.Ct., at 777 . . . . The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts. (citations omitted).

'The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.' *Marbury v. Madison,* 1 Cranch 137, 163, 2 L.Ed. 60 (1803).

*Id.,* at 396–397, 91 S.Ct. at 2004. The *Bivens* rationale has been extended far beyond the facts of that case. In this Circuit, *Bivens* has been used to justify creation of a private cause of action against federal officers for violations of First Amendment rights. See *Paton v. LaPrade,* 524 F.2d 862, 869–870 (3rd Cir. 1975). Case law also suggests that *Bivens* is not to be limited to actions against federal officers, but may be applied to state officers and state entities as well. See *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (3rd Cir. 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *Sixth Camden Corp. v. Township of Evesham,* 420 F.Supp. 709, 716 n. 4 (D.N.J. 1976).

The precise issue presented here is whether *Bivens* justifies recognition of a cause of action against a municipality based directly on the Fourteenth Amendment. The United States Supreme Court has not yet ruled on this issue. See *Mt. Healthy City School District v. Doyle,* —— U.S. ——, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The courts which have considered this question have reached disparate results. Among the decisions holding that there does exist a cognizable claim is *Brault v.*

*Town of Milton,* 527 F.2d 730, *rev'd on other grounds, id.* at 736 (2nd Cir. 1975) (*en banc*). See also *Skehan, supra* (semble); *Cox v. Stanton,* 529 F.2d 47 (4th Cir. 1975) (citing *Bivens,* approved action against county); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach,* 493 F.2d 799, 801–802 (5th Cir. 1974) (*dictum*); *Calvin v. Conlisk,* 520 F.2d 1, 8–10 (7th Cir. 1975), *vacated and remanded,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). See also *City of Kenosha v. Bruno, supra,* 412 U.S. at 516, 93 S.Ct. 2222 (Brennan & Marshall, JJ., concurring).

Most of the courts which have refused to recognize actions against municipalities based directly on the Constitution have felt compelled to reach that result by the Supreme Court decisions construing the Civil Rights Acts. They find that an action against a municipality based on the Fourteenth Amendment would be incompatible with the Court's holdings in *Monroe* and *Kenosha.* They reason that those cases reflect the Court's determination that Congress, in enacting the Civil Rights Acts, expressly declined to create a cause of action against municipal corporations for violations of civil rights. They conclude that it therefore would be improper for the lower federal courts to circumvent that Congressional determination by judicially creating such an action. See *Smetanka v. Borough of Ambridge,* 378 F.Supp. 1366, 1378 (W.D.Pa.1974); *Perzanowski v. Salvio,* 369 F.Supp. 223, 230–231 (D.Conn.1974); *Payne v. Mertens,* 343 F.Supp. 1355, 1358 (N.D.Cal. 1972); *Perry v. Linke,* 394 F.Supp. 323, 324–326 (N.D.Ohio 1974); *Brault v. Town of Milton,* 527 F.2d 730, 735–736 (2nd Cir. 1975) (Timbers, J., dissenting). *Cf. Jamison v. McCurrie,* 388 F.Supp. 990, 992 (N.D.Ill. 1975).

Because, in my view, neither the Civil Rights Act nor the Supreme Court decisions construing them reflect a broad policy antagonistic to municipal liability, I must reject the conclusion that there is no cause of action based directly on the Constitution, with jurisdiction conferred by § 1331.

*Monroe's* holding that municipalities are not persons within the meaning of § 1983 was based on the rejection by the House of Representatives of a proposed amendment to the 1871 Civil Rights Act from which § 1985 derives. The rejected Sherman amendment would have made local governmental units strictly liable in money damages to anyone injured within their borders by organized private violence. The Court quoted the remarks in debate of one of the amendment's leading opponents who argued that Congress had no constitutional power to impose any obligation upon counties and towns. The Court then asserted that "[t]he response of Congress to the proposal to make municipalities liable for certain actions being brought within federal purview by (section 1983) was so antagonistic that we cannot believe that the word 'person' was used in this particular Act to include them." *Monroe, supra,* 365 U.S. at 191, 81 S.Ct. at 486. The Supreme Court's reading of the legislative history indicates only that Congress did not undertake to bring municipalities within the ambit of the liability imposed by § 1983 because of an assumed lack of power to impose such liability—not that Congress intended to grant municipalities immunity from liability for constitutional violations. See Note, *Damage Remedies Against Municipalities for Constitutional Violations,* 89 Harv.L.Rev. 922, 939–940 [hereinafter *Municipal Liability*]. See also Hundt, *Suing Municipalities Directly Under the Fourteenth Amendment,* 70 Nw.U.L.Rev. 770, 784–787 (1975) [hereinafter *Suing Municipalities*]; *City of Kenosha v. Bruno,* 412 U.S. at 516–520, 93 S.Ct. 2222 (Douglas, J., dissenting in part).

In *Kenosha,* relying upon *Monroe's* narrow construction of the word "person" in the statute, the Court rejected the argument that § 1983 authorized an action for equitable, but not legal, relief against a municipality. The *Kenosha* Court's remand of the case for consideration of whether § 1331's jurisdictional amount requirement was satisfied fortifies my conclusion that the Supreme Court saw the Civil Rights Acts as no bar to an action against a municipality based directly on the Constitution. See generally, *Municipal Liability, supra,* at 941–942.

Sound policy considerations dictate the availability of a constitutionally-based cause of action against a municipality for deprivations of federally-secured civil rights. First, deterrence of constitutional torts should be enhanced by holding municipalities responsible for the acts of their agents. Municipalities will be encouraged to make their employees aware of the risk of liability and will probably act vigorously to secure their adherence to constitutional standards. See *Suing Municipalities, supra,* at 781–782. Perhaps more important, in cases such as the instant one, permitting suit against a municipality may be the only way to afford a plaintiff full relief. Actions against individual officers may be inadequate. Experience indicates that municipal officers are often judgment proof and that, in any case, juries are most hesitant to impose liability for damages on individual public officials.

I have considered "special factors counselling hesitation in the absence of affirmative action by Congress." *Bivens, supra,* 403 U.S. at 396, 91 S.Ct. at 2005. I cannot ignore the fact that imposition of liability on municipalities may be costly to the public.* But development of immunity and "good faith" defenses such as have developed for other civil rights defendants should protect municipalities from excessive or crippling liability, and § 1331's $10,000 jurisdictional amount requirement will serve to limit the number of frivolous lawsuits a municipality is called upon to defend. In any event, whatever the hypothetical dangers are, to my mind, they are outweighed by the certainty that a cause of action against a municipality is appropriate, necessary, and, in many cases, the only actual relief available. But see *Crosley v. Davis,* 426 F.Supp. 389 (E.D.Pa.1977).

* The Court will not distinguish between equitable relief and money damages. In the instant case, plaintiff seeks "backpay", a remedy which can be characterized as either legal or equitable.

For the reasons set forth above, defendant Township of Mt. Olive's motion to dismiss will be denied on condition that plaintiff amend his complaint, within ten (10) days, to include a proper § 1331 jurisdictional allegation.