MAX L. POWELL, TRUSTEE, *v.* CHARLES L. WOODBURY AND

EDWARD P. WOODBURY.

January Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, AND HASELTON, JJ.

Opinion filed May 13, 1912.

*Wrongful Issuance of Injunction—Remedies—Malicious Prosecution—Malice and Want of Probable Cause—Advice of Counsel—Injunction Restraining Sale Under Trust Deed—Offer to Redeem—Necessity—Requisite Amount.*

Before parties, who have the right to redeem real estate from a deed of trust for the benefit of creditors, have any standing for an injunction restraining a sale under the deed they must at least have *offered* to pay the trustee money sufficient to satisfy both the obligations and the expenses of the trust.

A voluntary discontinuance of a suit in chancery before the expiration of the time for defendant to enter his appearance ends the case for all purposes except that of giving defendant judgment for reasonable costs, as provided by P. S. 1758.

P. S. 1287, providing that, when an injunction in chancery is dissolved by final decree in favor of defendant, he may recover his actual damages caused by the wrongful issuance of the injunction, does not apply where an injunction wrongfully procured was dissolved by a voluntary discontinuance of the case before the expiration of the time for defendant to enter his appearance.

P. S. 1284, providing that on the dissolution of "such injunction" the damages shall be ascertained by reference and shall include not only the reasonable rents of the land recovered by the verdict, but also the waste committed thereon after the granting of the injunction, relates only to ascertaining damages occasioned by injunctions issued to stay proceedings at law in actions of ejectment after verdict.

Where an injunction bond is conditioned for the payment of such damages as may be sustained because of the injunction, an action on that bond is the only remedy for such damages, unless the injunction was obtained maliciously and without probable cause, but, if it was, an action lies for malicious prosecution in procuring the injunction, instead of an action on the bond.

No action lies at common law for damages caused by an injunction unless

it was procured maliciously and without probable cause, and injunction bonds were devised to cure that defect.

Where a party, after having maliciously and without probable cause procured an injunction, voluntarily discontinued the injunction suit, he thereby deprived the adverse party of his remedy in chancery on the injunction bond, and the latter was then, if not before, free to resort to a suit for malicious prosecution to recover the damages caused by the injunction.

Where parties, who had the right to redeem real estate from a deed of trust for the benefit of creditors, maliciously and without probable cause obtained an injunction restraining a sale under the deed, and, before they voluntarily discontinued the injunction suit, the property decreased in value, the trustee, as such, could maintain against them a suit for malicious prosecution, regardless of whether therein he could recover damages for injury to his reputation, feelings, and the like, for that goes to the elements of damages, not to the remedial right.

In a suit for malicious prosecution, the defence that defendants acted under the advice of counsel is overthrown by the finding that they did not honestly and in good faith act on such advice.

Where parties, who had the right to redeem real estate from a deed of trust for the benefit of creditors, without in good faith offering to pay the amount necessary to redeem, and without honestly and in good faith relying on the advice of counsel that they had ground for an injunction to restrain a sale under the deed, by means, of knowingly false allegations in a bill in equity procured an injunction restraining such sale, they obtained the injunction maliciously and without probable cause, and are liable to the trustee for malicious prosecution.

CASE for malicious prosecution. Plea, the general issue with notice. Trial by jury at the March Term, 1911, Chittenden County, *Butler*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*R. E. Brown* and *Edmund C. Mower* for the defendant.

*Max L. Powell, V. A. Bullard* and *J. W. Redmond* for plaintiff.

ROWELL, C. J. This is an action for malicious prosecution. The essential facts are these, in substance. Before and on May 8, 1909, George M. Delaney owned the Hotel Burlington property in Burlington, where he had carried on the hotel business for many years; but it had come to pass that he was financially embarrassed, and so on that day he conveyed to the plaintiff,

his largest creditor, by his quitclaim deed of that date, all of said property in trust for the benefit of his creditors in *pro rata* share, except the secured creditors, who were the plaintiff and Payette, Meldenshon & Co., the purpose of said deed being as declared therein, to enable the trustee so to manage the estate of the grantor that all of his creditors might receive in full the amount of their claims, as the assets, at a fair market value, were in excess of all his liabilities. Said deed further declared that the trustee was to handle the estate, both real and personal, for the benefit of the creditors, and to render accurate account of all receipts and disbursements, and to account to the grantor for any excess above the trustee's legal liabilities. The trustee thereupon took possession of said property, and managed and conducted the same as a hotel till the 8th of January, 1910, when the hotel proper was practically destroyed by fire, and rendered unfit for further use unless rebuilt; but the part of the building in which intoxicating liquor was being sold under a license was not destroyed, and that business continued therein. But before the fire, and on September 17, 1909, Delaney executed to the trustee another paper writing, whereby, in consideration of the trustee's raising upwards of six thousand dollars with which to pay off the unsecured creditors in full, he agreed to allow the trustee to carry on the hotel as proprietor in any manner he saw fit, giving him full power to look after his interests, and agreed that he might decide whether to sell the property, to rent it, or to carry it on himself, leaving the whole management of it to the trustee for his and the grantor's benefit.

On March 7, 1910, Delaney agreed in writing under seal to sell the property to Rufus E. Brown or his assigns within sixty days from that date, at and for the sum of twenty-four thousand dollars, and on the same day that agreement was assigned to the defendants. Afterwards, on the 14th day of said March, Delaney, by his deed of that date, quitclaimed to the defendants all his right and title to the real estate aforesaid on the west side of St. Paul Street, reserving the use of the barroom till the first day of the next May.

The plaintiff, trustee as aforesaid, having advertised the property to be sold at public auction on the 26th of said March, the defendants and Delaney jointly brought a bill in chancery

against him the 24th of said March, and procured an injunction against his selling the property until further order, and the injunction was served the 25th, the day before the sale was to be made.

Said bill alleged the substance of the foregoing facts, which were not then and are not now in dispute; and further alleged, among other things, that the defendant therein, the plaintiff here, had failed to account for the insurance money received for the loss by fire; that he threatened to close the bar and stop the sale of intoxicating liquor thereat, and to sell all the personal property held in trust; that soon after Delaney deeded to these defendants as aforesaid, and before bill brought, the orators demanded of the plaintiff, trustee as aforesaid, a full and true account of his trusteeship and management of the hotel business, and of the sale of intoxicating liquor, and then and there offered to pay him all and every of Delaney's debts, secured and unsecured, to redeem all of his property from all mortgages and said trust deed, and demanded that he convey the hotel property on the west side of St. Paul Street to these defendants, but that the plaintiff neglected and refused to account at all to the orators, and to tell them the amount required to redeem, and to release the property from any of the incumbrances. The bill further alleged that the orators were then willing and able, and ever since had been and still were willing and able, and had offered, to pay the plaintiff, trustee as aforesaid, the full amount of all the incumbrances and indebtedness on said property, and all claims and demands against Delaney that they ought to pay to the plaintiff, trustee as aforesaid, or to Henderson as mortgagee, who was also a defendant in the bill, together with all just charges, expenses, and allowances, in order fully to redeem said property from all mortgages and said trust deed; but that the plaintiff then refused and still refused to receive and accept the same, but claimed the sole and absolute right to control and dispose of said property, and was advertising the same for sale at public auction. And the bill offered to redeem by paying the full amount of the incumbrances and indebtedness found due on accounting, for which it prayed, and also to pay all just charges and expenses of the trusteeship.

This bill is the suit complained of as malicious, made so, it is claimed, by the injunction, which, it is said, caused the damage sought to be recovered, as the property shrank in value by delaying the sale until the 7th of May, when the suit was voluntarily discontinued by the orators.

That the defendants and Delaney had a right to redeem the property from the trust is not denied. The court told the jury that. But what the plaintiff complained of below and complains of here is the injunction. He says that it was obtained by reason of material allegations of the bill that were false to the knowledge of the defendants, without which the bill did not contain enough to warrant the injunction, and consequently that it would not have been granted.

The court told the jury that the material allegations of the bill were, that the plaintiff failed to account to the orators; that he ought to have accounted for the management and control of the property, and to have informed the orators of the amount of money required to pay all obligations of the trust, and to have released the property to them; that they demanded of him an accounting, and offered to pay him sufficient money to satisfy all the obligations of the trust; that the plaintiff claimed, and his evidence tended to show, that the defendants never made any offer in good faith to pay those debts and obligations, and failed to make a sufficient offer and tender in that behalf, and did not act in good faith in respect thereto. In this connection the court told the jury to inquire whether said allegations were true or false, and if false, whether knowingly so or not, and to inquire as to the good faith of the defendants in bringing the suit.

It appeared that the principal interviews between the parties took place at the Van Ness House before the bill was brought. As to those interviews the court told the jury that if thereat the defendants, having obtained an option and a deed from Delaney, offered in good faith to pay the plaintiff, and gave him fairly to understand that they were ready and wanted to pay him sufficient money to satisfy all the obligations and expenses of the trust, that is, all the creditors of Delaney and his obligations to the plaintiff, and were prepared to do so as soon as the plaintiff gave them a full statement thereof, and

requested a deed from him, and the plaintiff understood it, or ought to have understood it if he had exercised the care and prudence of a prudent man, and would have understood it but for his own fault; or if the defendants in those interviews honestly believed, and had a right to believe, that they had made such an offer and that the plaintiff understood it or ought to have understood it, and the plaintiff refused the offer, or by his own conduct prevented it from being fairly made, and gave the defendants to understand that he refused it, or refused to comply with their requests, then there was probable cause for bringing the injunction suit, and the plaintiff could not recover. But if, on the other hand, the defendants failed through their own fault to offer to pay the plaintiff sufficient money for the purposes aforesaid, and without the fault of the plaintiff, they could not maintain that suit; but that they might, nevertheless, have honestly believed they had made a sufficient offer, and unless they did thus believe, and were fairly justified in that belief, there was no probable cause unless found in the advice of counsel, as to which the court charged that the defendants had a right to act under the advice of competent counsel, and if they went to such counsel and stated the case fairly to them, just as they understood and believed it to be, as far as the facts were not already known to the counsel, and all the material facts were understood by counsel, then the defendants would have a right to rely on their advice, and if, acting honestly and in good faith, they did rely upon the advice of counsel that the allegations of the bill were sufficient to maintain it and the injunction, then that was probable cause, and the plaintiff could not recover. And the court further charged that the plaintiff could not recover unless malice on the part of the defendants in bringing the suit and procuring the injunction was established.

Under this charge, the verdict being for the plaintiff, the jury must have found that the defendants did not in good faith offer to pay the plaintiff, nor give him fairly to understand that they were ready and wanted to pay him sufficient money to satisfy all the obligations and expenses of the trust, and that the plaintiff did not so understand the matter, and was not in fault for not so understanding it, and that the defendants

did not honestly believe, and had no right to believe, that they had made such an offer and that the plaintiff understood it; and also must have found that the defendants did not honestly and in good faith take the advice of counsel and rely upon it, believing that they had ground for an injunction, and that they were actuated by malice in bringing the suit and procuring the injunction.

Now the charge as to offering to pay before bill brought was quite as favorable to the defendants as they were entitled to have it, for though, for the purpose of redemption merely, it was enough that the bill offered to redeem by paying, yet in order to have any standing for an injunction to stop the sale, the defendants should, at least, have *offered* to pay sufficient money to satisfy the obligations and expenses of the trust, which the jury has found they did not do and did not believe they had done. It is unnecessary, therefore, to inquire whether they should have done more than to offer, and should have tendered, paid into court, or otherwise secured the plaintiff.

Mr. High says that a sale of property under a trust deed will not be enjoined when the complainant admits by his bill that a portion of the debt thereby secured is justly due, but makes no tender of that amount; that he who seeks equity must do equity, and in the absence of any offer by the complainant to pay the amount he admits to be due, he is entitled to no consideration in a court of equity. 1 High, Inj. 3d Ed., §443. And Mr. Perry says that if any amount is admitted to be due, or appears to the court to be due, that sum must be brought into court or tendered to the creditor before an injunction will be granted. 2 Perry, Trusts, 3d Ed. 192. So Mr. Jones, speaking of powers of sale in mortgages and trust deeds, says that payment of the amount justly due must be tendered, to entitle the person seeking the injunction to the consideration of the court. 2 Jones, Mort. 2d Ed., §1806.

In *Sloan* v. *Coolbaugh*, 10 Iowa, 31, it is held that an injunction should not be granted in a proceeding to cancel a sale of property under a mortgage and restrain the purchaser from taking possession and disposing of the same, when the petitioner does not allege a tender of the amount admitted to be due on the mortgage.

So a party who comes into a court of equity asking for relief against a usurious contract must, before he is entitled to injunctive relief, bring into court the money actually advanced to him, with legal interest, and then the court will aid him as to the usurious excess. *Rogers* v. *Rathbun,* 1 Johns. Ch. [*367].

It is held in *Meysenburg* v. *Schleiper,* 46 Mo. 209, that an incumbrancer has no right to enjoin the sale of property under a prior incumbrance unless he is ready and offers to pay off the prior incumbrance in full. *Powell* v. *Hopkins,* 38 Md., is to the same effect.

*MacLeod* v. *Jones,* L. R. 24 Ch. Div. 289, decided in 1883, was an application to restrain a mortgagee from exercising his power of sale. Brett M. R., said that as far as he understood the practice of the court, the mortgagee could not be stopped from selling the estate without the mortgagor pays into court or otherwise secures to him, not what the court might think *prima facie* was due to him as far as it could ascertain, but without paying into court that which the mortgagee demands, subject to a subsequent inquiry. Cotton, L. J., said that under ordinary circumstances the court never interferes unless there is something very strong; that it does not interfere on any suggested case without requiring the plaintiff applying to pay into court, not what the judge or the court on hearing the evidence is satisfied will probably be the amount due, but what the mortgagee, the accounts not having been yet taken, swears is due to him on his security. And this, he said, is perfectly right, because they ought not to prevent mortagees from exercising the powers given to them by their security, without seeing that they are perfectly safe. Bowen, L. J., said substantially the same.

But the defendants say that conceding the wrongful issuance of the injunction and resulting injury to the plaintiff as trustee, his only remedy is on the injunction bond as prescribed by P. S. 1287, which provides that when an injunction in chancery is dissolved by final decree in favor of the defendant, he shall be entitled to recover his actual damages caused by the wrongful issuing of the injunction, which shall be ascertained by reference to a master. But assuming that that is the only way of ascertaining damages in cases within the statute, yet here the case is not within the statute, for there was no dissolu-

tion of the injunction by final decree, but only by voluntary discontinuance of the suit before the expiration of the time for the defendant to enter his appearance. That discontinuance ended the case for all purposes except that of giving judgment for the defendant to recover reasonable costs, as provided by P. S. 1758, which it does not appear were ever asked. *Woods* v. *Darling*, 71 Vt. 348, 45 Atl. 750. It is seen, therefore, that the defendants themselves put it out of the power of the plaintiff to have his damages ascertained in that case, and they cannot now claim that that was his only remedy.

Nor have we any other statute applicable to the case, though the defendants refer to P. S. 1284 in connection with 1287. But 1284 relates only to ascertaining damages occasioned by injunctions issued to stay proceedings at law in actions of ejectment after verdict.

But the defendants further say that if the statute does not control the method of ascertaining the damages, then an action on the injunction bond is the only remedy, as the bond is conditioned for the payment of such damages as may be sustained by reason of the injunction. And this would be so when want of probable cause and malice do not combine, but when they do, as here, another cause of action thereby accrues to the party injured, namely, an action on the case for malicious prosecution, which is not merged in the remedy on the bond, but may be pursued instead of that. This is generally so held, though the defendants refer to and largely rely upon *Gorton* v. *Brown*, 27 Ill. 489, 81 Am. Dec. 245, which was an action on the case for falsely, maliciously, and without probable cause, procuring an injunction to be issued restraining the plaintiff from disposing of certain lumber and collecting certain debts, whereby he was damaged; and it was held that the action could not be maintained, for that the injunction bond was designed by the statute to cover all damages that the party injured could possibly sustain, and that he was bound to sue upon it, and could not resort to an action on the case. The court sharply criticised *Cox* v. *Taylor*, 10 B. Monroe, 17, which holds the other way, and said it found no other case that did. But now many such cases are to be found, and in the note to *Mark* v. *Hyatt*, 135 N. Y. 306, 18 L. R. A. 275, 31 N. E. 1099, it is said that the Illinois case

stands alone against the decisions of various courts upholding an action for malicious prosecution based on an injunction obtained maliciously and without probable cause. Thus, in *Keber* v. *Mercantile Bank*, 4 Mo. App. 195, it is held that the common law remedy is not merged in the remedy on the bond, but that the common law gives no remedy for an injury done by legal proceeding unless the process of the court is abused through malice and want of probable cause, in which case the party who abuses it is considered as a trespasser from the beginning, and as if he had acted without authority from the start.

So in *Iron Mountain Bank* v. *Mercantile Bank*, 4 Mo. App. 505, it is held that there can be no recovery of damages arising from an injunction, except in an action on the bond, unless it is averred and proved that the process of the court was abused maliciously and without probable cause.

*Robinson* v. *Kellum*, 6 Cal. 399, was an action on the case for wrongfully suing out an injunction, and it was held that such an action will not lie unless it is alleged as an abuse of process through malice and without probable cause; that if the act complained of is destitute of these elements, the remedy is upon the bond. The same thing is held in *Asevado* v. *Orr*, 100 Cal. 293, 34 Pac. 777.

No action lies at common law for damages caused by an injunction, unless it was sued out maliciously and without probable cause. To remedy this defect, injunction bonds were devised, and then there were two remedies, one on the bond and one for malicious use of the process without probable cause. *Railway Co.* v. *Railway Co.*, 47 West Va. 725, 35 S. E. 978; *Mark* v. *Hyatt*, 135 N. Y., 306, 31 N. E. 1099, 18 L. R. A. 275, and note.

Mr. High says that there is some conflict in the cases on this subject, but that the better doctrine is that the defendant's right of action at common law is not merged in the remedy on the bond, and that an action on the case will lie if there is malice and want of probable cause. 2 High Inj. 3d Ed. §1648. So in 22 Cyc. 1061, it is said that when an injunction has been wrongfully issued there is no liability for damages in an action other than the injunction suit, except in an action on the bond, unless the party against whom the injunction was issued can

make out a case of malicious prosecution by showing malice and want of probable cause, and that the remedies on the bond and by an action for damage may both exist.

But the defendants still further say that whatever may be the broad general rule as to the propriety of malicious prosecution, it does not lie here, even on the reasoning of the courts that sustain the action, for if the plaintiff could recover no damages not fairly within the scope of the bond, his remedy was exclusively in chancery, and that the rule deducible from our own cases and expressly embraced in the condition of the bond is, that all damages reasonably flowing from the wrongful issuance of the injunction are covered by the bond; and that in *Center* v. *Hoag*, 52 Vt. 401, the Court suggested even a broader rule than this when the injunction is obtained and used in bad faith and for the purposes of oppression. But, as we have seen, the plaintiff's remedy in chancery was taken away by the defendants themselves when they discontinued their injunction suit, and then, if not before, the plaintiff was free to resort to such other remedy as the law afforded him, and that it afforded him the remedy he is here pursuing we have already held; and if, as the defendants claim, suing as trustee as he does, he can recover only damages ordinarily incident to injunctions of this kind, and not damages predicated upon the peculiarly personal nature of the action, such as for injury to reputation, feelings, and the like, matters entirely foreign to his trusteeship, it makes no difference, for those things go, not to the right to this remedy, but only to the things for which recovery can be had by it.

The defendants lay much stress upon their claim of acting under the advice of counsel. But that defence was completely taken from them by the finding that they did not honestly and in good faith act upon that advice; and whether they did or not, was a question for the jury.

Thus it appears, contrary to the claim of the defendants in their motion for a verdict, that there was evidence tending to show both want of probable cause and malice; to show want of probable cause, in the facts found that they did not in good faith offer to pay the plaintiff as they alleged, and had no reason to believe, and did not honestly believe, that they had, and

did not honestly and in good faith take the advice of counsel and rely upon it, believing that they had ground for an injunction; to show malice, in the want of probable cause, and the known falsity of the allegations made to show it, to say nothing of the manner of obtaining the option, the purpose for which it was obtained, and what was said about it, to which the court specially directed the attention of the jury. *Wheeler* v. *Nesbitt,* 24 How. 544, 550, 16 L. ed. 765; *Stewart* v. *Sonneborn,* 98 U. S. 187, 193, 25 L. ed 116; *Driggs* v. *Burton,* 44 Vt. 124, 148.

*Judgment affirmed.*