# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-064

Filing Date: July 31, 2019

No. A-1-CA-36038

NORMAN GAUME,

      Plaintiff-Appellant,

v.

THE NEW MEXICO INTERSTATE
STREAM COMMISSION, JIM DUNLAP,
in his official capacity as Chairman of the
Commission, THE GILA SUBCOMMITTEE
OF THE NEW MEXICO INTERSTATE
STREAM COMMISSION, BUFORD HARRIS,
in his official capacity as Chairman of the Gila
Subcommittee of the Commission, AMY HAAS,
in her official capacity as Acting Director of
the Commissions, SCOTT VERHINES, in his
official capacity as New Mexico State
Engineer and Secretary of the Commission,

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

Released for Publication October 29, 2019.

Daniel Yohalem
Santa Fe, NM

Alto Street Environmental Consulting
Douglas W. Wolf
Reston, VA

for Appellant

Brownstein Hyatt Farber Schreck, LLP
Steven O. Sims

Dulcinea Z. Hanuschak
Albuquerque, NM

Keitha A. Leonard
Tesuque, NM

Interstate Stream Commission of New Mexico
Dominique M. Work
Santa Fe, NM

for Appellees

**OPINION**

**VANZI, Judge.**

**{1}**     In this appeal, we consider whether the district court can award damages for a wrongful injunction when it did not require Plaintiff to post security under Rule 1-066(C) NMRA. We conclude that the district court had no discretion to award damages to a wrongfully enjoined Defendant in the absence of an injunction bond. Accordingly, we reverse the district court's award of attorney fees accrued in seeking to dissolve a wrongful injunction.

**BACKGROUND**

**{2}**     This case began when Plaintiff Norman Gaume filed a complaint against the New Mexico Interstate Stream Commission (the Commission) based on purported violations of the Open Meetings Act (OMA), NMSA 1978, §§ 10-15-1 to -4 (1974, as amended through 2013). The majority of Plaintiff's complaint focused on the Gila Committee, a committee created by the Commission to gather facts about the Gila River Basin and provide input to the Commission concerning matters related to the Arizona Water Settlements Act (AWSA), Pub. L. No. 108-451, 118 Stat. 3478 (2004); *see generally* Adrian Oglesby, *Implementation of the Arizona Water Settlement Act in New Mexico: An Overview of Legal Considerations*, 52 Nat. Resources J. 215 (2012) (discussing history of the AWSA and the Gila River). Plaintiff alleged that the Gila Committee violated the OMA by meeting on at least thirteen occasions in private and without notice. *See* § 10-15-1(B) (establishing public meeting requirement); § 10-15-1(D) (discussing notice requirement). Additionally, Plaintiff alleged that the Commission approved at least two large service contracts at non-public meetings held in violation of the OMA. *See* § 10-15-1(H)(6) (providing that "[t]he actual approval of purchase of the item or final action regarding the selection of a contractor shall be made in an open meeting").

**{3}**     Plaintiff also petitioned for a temporary restraining order (TRO) and preliminary injunction preventing the Gila Committee "from taking any action or making any decision related in any way to the AWSA or the Gila River." As the basis for the TRO and preliminary injunction, Plaintiff claimed that there was an immediate risk of harm

because the Gila Committee could "create new policy regarding proposals considered under the AWSA," which could lead to the improper spending of state and federal funds. In addition, Plaintiff requested that the Commission "be enjoined in the same manner as the [Gila Committee]" because the Commission could take action relying on the Gila Committee's recommendations.

**{4}** Judge Raymond Ortiz granted Plaintiff's request for a TRO ex parte, without a hearing, on October 23, 2014. The TRO broadly ordered the Commission to "not take any action regarding the Gila River and/or the [AWSA]" or "hold any meeting of the [Commission] or the [Gila Committee]." The district court set a hearing for the next week for the Commission to "show cause before the [district c]ourt why the [TRO] should not be extended or a preliminary injunction issued." The day after the district court issued the TRO, the Commission filed an emergency motion to dissolve the TRO, claiming that Plaintiff's allegations were false. The Commission also requested that the district court require Plaintiff to post a $1 million bond to compensate the Commission for costs and damages for the wrongfully granted TRO. *See* Rule 1-066(C). The Commission argued that the injunction bond was necessary because the TRO had the possibility of preventing the State from obtaining approximately $62 million in federal funding under the AWSA if the Commission did not submit Gila River-related proposals to the Secretary of the Interior by the end of the year.

**{5}** On October 30, 2014, the day set for the hearing on the preliminary injunction, six local governments moved to intervene in support of the Commission. As a result, the district court spent much of the hearing resolving the motion to intervene. However, after the Commission informed the district court that it needed to hold meetings within the next two weeks in order to meet deadlines under the AWSA, the court agreed to modify the TRO and rescheduled the hearing on the preliminary injunction for November 12, 2014. The district court entered a modified TRO on November 3, 2014, which provided:

1. The [TRO] granted at Plaintiff's request on October 23, 2014, is hereby modified to allow the [Commission] to hold public meetings.

2. The Commission is further allowed to conduct any and all business, take any and all actions or votes, and make any and all decisions concerning issues that are not related to the Gila River Basin and the [AWSA].

3. With regard to the Gila River Basin and the AWSA, the Commission is allowed to hold public, informational meetings . . . but is not allowed to make decisions on AWSA or Gila River Basin items at those meetings.

4.  This order shall remain in force until further order of this Court.[1]

**{6}**  Before the November 12, 2014, hearing, Judge Francis Mathew replaced Judge Ortiz and rescheduled the hearing for November 20. At the hearing, the Commission renewed its argument that the district court should dissolve the TRO because it did not require Plaintiff to post an injunction bond or show good cause as to why he should not post a bond under Rule 1-066(C). When the district court asked Plaintiff how much of a bond he could afford in light of the millions of dollars in damages the State could potentially incur Plaintiff stated that he could only afford a $500 bond. The district court replied that $500 would be insufficient and dissolved the TRO. Additionally, after a short recess, Plaintiff voluntarily dismissed his petition for a preliminary and permanent injunction.

**{7}**  The case proceeded forward on the merits of Plaintiff's OMA claims, and both parties eventually moved for summary judgment. The district court granted partial summary judgment to the Commission on all of Plaintiff's claims that the Gila Committee violated the OMA. However, the court granted partial summary judgment in favor of Plaintiff on his claims that the Commission violated the OMA through its approval process of two service contracts. Following the ruling on the merits, the parties litigated the issue of attorney fees and costs. The district court ruled that it would not award the Commission any attorney fees for its successful defense of the majority of Plaintiff's OMA claims because it did "not find that Plaintiff brought his action without sufficient information or belief that good grounds supported it, although he was mistaken in his belief as to some of the grounds." *See* § 10-15-3(C) (providing that "[a] public body defendant that prevails in a court action brought under this section shall be awarded its reasonable attorney fees from the plaintiff if the plaintiff brought the action without sufficient information and belief that good grounds supported it"). However, the district court found that the TRO was "overly broad when issued, restraining the [Commission] from performing [its] lawful duties contrary to the law." For this reason, the district court awarded the Commission $35,752.50 (plus applicable gross receipts tax) for the portion of its attorney fees related to its efforts to dissolve the TRO. This appeal followed.

## DISCUSSION

**{8}**  The sole issue on appeal is whether the district court abused its discretion in awarding damages in the form of attorney fees to the Commission. Plaintiff makes three

---

[1]We note that our Rules of Civil Procedure only authorize a district court to keep a TRO granted without notice in place for a maximum of twenty days. *See* Rule 1-066(B)(2) ("Every temporary restraining order granted without notice . . . shall expire by its terms within such time after entry, *not to exceed ten (10) days*, as the court fixes, *unless within the time so fixed the order, for good cause shown, is extended for a like period*[.]" (emphases added)). By the time the district court entered the modified TRO, the original TRO had been in place for twelve days. Thus, it would appear that the modified TRO only remained effective until November 12 (i.e., nine more days) at most. However, as neither party disputes the district court's power to extend the TRO beyond the twenty days provided by Rule 1-066(B)(2),we do not express an opinion as to the effect of the district court's indefinite extension of the TRO.

arguments against the propriety of the district court's attorney fee award. First, Plaintiff argues that the district court cannot impose damages against him personally, but only against a bond required by Rule 1-066(C), which the district court did not require in this case. Second, Plaintiff argues that the TRO was not wrongful because Plaintiff prevailed on two of his OMA claims relating to the approval of service contracts. Lastly, Plaintiff claims that assessing attorney fees against Plaintiff would contravene the public policy of OMA. We conclude that Plaintiff's first argument is determinative in this appeal and hold that the district court abused its discretion in awarding attorney fees in the absence of an injunction bond.

## Standard of Review

**{9}**     "New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney[] fees." *N.M. Right to Choose/NARAL v. Johnson (NARAL)*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted). However, our courts recognize an equitable exception to this rule for awarding attorney fees as damages to a wrongfully enjoined defendant. *Id.* ¶¶ 21-22. We review the award of attorney fees for an abuse of discretion. *Parkview Cmty. Ditch Ass'n v. Peper*, 2014-NMCA-049, ¶ 23, 323 P.3d 939. The district court abuses its discretion "when its decision is contrary to logic and reason." *NARAL*, 1999-NMSC-028, ¶ 6 (internal quotation marks and citation omitted). Additionally, the district court abuses its discretion when its decision is "premised on a misapprehension of the law." *Id.* ¶ 7 (internal quotation marks and citation omitted). In determining whether the district court premised its decision on a misapprehension of the law, we review the application of the law to the facts de novo. *Id.*

**{10}**     In support of Plaintiff's first argument that the district court could not award attorney fees against him because it did not require him to post an injunction bond, Plaintiff cites Rule 1-066(C), which provides:

> No restraining order[ or] preliminary injunction . . . shall issue or occur except upon the giving of security by the applicant, in such sum as the court deems proper, *for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained*, . . . provided, however, that for good cause shown and to be recited in the order made, the court or judge may waive the furnishing of security.[2]

(Emphasis added.) Plaintiff claims the emphasized language indicates that Defendants may seek payment for damages incurred due to a wrongful injunction *solely* from the security that the district court requires under Rule 1-066(C). While we agree with Plaintiff that the Commission has no right to recover damages in the absence of an injunction bond, the answer does not lie in Rule 1-066(C). Rather, the answer stems

---

[2]Contrary to Rule 1-066(C), Judge Ortiz's orders granting and modifying the TRO did not explicitly waive the furnishing of security. Nonetheless, the parties do not dispute that Judge Ortiz granted and modified the TRO without requiring Plaintiff to post security.

from the lack of a common law cause of action for a wrongful injunction, which Rule 1-066(C) seeks to remedy. We explain.

**History of Wrongful Injunctions and the Injunction Bond**

**{11}** Injunctions were first used by the English High Court of Chancery as early as the fourteenth century. *See* David W. Raack, *A History of Injunctions in England Before 1700*, 61 Ind. L.J. 539, 555 (1986). In the early history of equity jurisprudence, the chancellor often issued preliminary injunctions ex parte without requiring the plaintiff to put up any security. *See Teasdale v. Jones*, 40 Mo. Ct. App. 243, 246 (1890); Note, *Interlocutory Injunctions and the Injunction Bond*, 73 Harv. L. Rev. 333 (1959) (noting that requiring the plaintiffs to put up security when seeking ex parte injunctions did not become standard practice in England until the mid-nineteenth century). However, in those cases where it was later determined that the plaintiff was not entitled to the injunction, the chancellor had limited power to award damages for the wrongful injunction. *See Russell v. Farley*, 105 U.S. 433, 436 (1881) (alluding to the practice of the High Court of Chancery and stating that "[w]here no bond or undertaking has been required, it is clear that the court has no power to award damages sustained by either party in consequence of the litigation"). Consequently, wrongfully enjoined defendants seeking damages had to file suit for malicious prosecution,[3] in which they had to prove the plaintiff obtained the injunction through malice or want of probable cause—a difficult burden to meet. *See Teasdale*, 40 Mo. App. at 246; *see also* 2 James L. High, *A Treatise on the Law of Injunctions* § 1648, at 1233 (Chicago, Callaghan & Co. 3rd ed. 1890) (stating that "to support such action [for malicious prosecution], the plaintiff's pleading must clearly negative the existence of probable cause for the injunction; it will not suffice to allege that the writ was unjustly and wrongfully sued out, but there must be distinct allegations of malice or a want of probable cause"). Thus, in cases where a plaintiff requested an injunction to which he or she was not entitled (but did so in good faith) the wrongfully enjoined defendants had no remedy. Courts characterized the defendant's damages as *damnum absque injuria*, that is, damage without a wrongful act for which there was no legal redress, because courts regarded the damages caused by the injunction as flowing from judgment of the court, rather than the plaintiff. *See Hamilton v. Hecht*, 299 S.W.2d 577, 579 (Mo. Ct. App. 1957) (discussing common law liability for the plaintiffs who sought an injunction in good faith, which was later dissolved and stating that "[a]ny damages suffered by [the] defendant because of the [wrongful] injunction were traceable directly to the court which had issued it, and were *damnum absque injuria*"); *damnum absque injuria*, *Black's Law Dictionary* (11th ed. 2019); s*ee also* 1 Charles Fisk Beach, Jr., *Modern Equity: Commentaries on the Law of Injunctions* § 158, at 177-78 (Albany, H.B. Parsons 1895) (stating that neither law nor equity furnished a remedy to a wrongfully enjoined defendant if the plaintiff requested the injunction in good faith because the damages were regarded as flowing from the court's order).

---

3New Mexico courts have merged the tort of malicious prosecution with the tort of abuse of process into the single cause of action for malicious abuse of process. *See Hinkle v. State Farm Fire & Cas. Co.*, 2013-NMCA-084, ¶ 13, 308 P.3d 1009. However, for ease of reference, we refer to the tort by its historic title in this section.

**{12}**     This "defect" in the common law led to the creation of the injunction bond. *See Powell v. Woodbury*, 83 A. 541, 545 (Vt. 1912) ("No action lies at common law for damages caused by an injunction unless it was sued out maliciously and without probable cause. To remedy this defect, injunction bonds were devised, and then there were two remedies, one on the bond and one for malicious use of the process without probable cause."); *Glen Jean, Lower Loup & D.R. Co. v. Kanawha, Glen Jean & E.R. Co.*, 35 S.E. 978, 978-79 (W. Va. 1900) ("The very purpose of the [L]egislature in requiring an injunction bond to cover actual damages sustained [for a wrongful injunction] was to supply this defect in the common law[.]"). As one court put it,

> An injunction is a high prerogative writ; executed and enforced in a summary manner. By service of the writ, the party is required immediately to withdraw and cease operations; hence the propriety in requiring a bond for the indemnity of the party in such damages as he may sustain, by reason thereof.

*Gear v. Shaw*, 1 Pin. 608, 615 (Wis. 1846). Early American courts of equity used their broad discretion to frame orders granting injunctions to condition the grant of a TRO or preliminary injunction on a plaintiff's agreement to post a bond. *See Commerce Tankers Corp. v. Nat'l Mar. Union of Am., AFL-CIO*, 553 F.2d 793, 800 (2d Cir. 1977); *Teasdale*, 40 Mo. App. at 246-47 (1890); 1 Fisk Beach, Jr., *supra*, § 158 at 177-78; Howard C. Joyce, *Treatise on the Law Relating to Injunctions* §§ 158, 161, at 269, 274 (1909). Additionally, as early as 1788, states began enacting statutes and rules requiring the plaintiffs to post injunction bonds when seeking a TRO or preliminary injunction. *See Interlocutory Injunctions and the Injunction Bond*, *supra*, at 333. Eventually, every state—including New Mexico—as well as the federal courts, adopted statutes or rules providing for the posting of injunction bonds. *See* Dan B. Dobbs, *Should Security Be Required As a Pre-Condition to Provisional Injunctive Relief*, 52 N.C. L. Rev. 1091, 1196-97 (1974) (noting that every state, except Massachusetts,[4] has a statutory or rule provision for an injunction bond); 42 Am. Jur. 2d *Injunctions* § 315 (2019) (noting that "[t]he Federal Rules of Civil Procedure and the statutes of the majority of the states require an injunction bond"). While some of these provisions, like New Mexico's, allow the trial court to waive the injunction bond requirement for good cause, others require plaintiffs to post bonds in every case. *Compare* Rule 1-066(C) (allowing the district court judge to waive the security requirement for good cause), *with* Cal. Civ. Proc. Code § 529(a) (West 1992) ("On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction.").

**{13}**     Essentially a contract to indemnify, the injunction bond created a significantly easier way for wrongfully enjoined defendants to recover damages. *See Interlocutory Injunctions and the Injunction Bond*, *supra*, at 343. Although trial courts retained varying degrees of discretion in determining whether to award damages on the bond, the

---

4Massachusetts has since enacted a rule to this effect. *See* Mass. R. Civ. P. 65(c) (2019).

wrongfully enjoined defendants no longer had to prove the plaintiff's malice or lack of probable cause. *See City & Cty. of Denver v. Ameritrust Co. Nat. Ass'n*, 832 P.2d 1054, 1056 (Colo. App. 1992) (discussing the different standards of discretion courts have in awarding damages on the injunction bond). Instead, the defendants merely had to show that they suffered damages due to an injunction to which the plaintiff was not entitled. *See, e.g.*, *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1051 (2d Cir. 1990) ("Under [Rule] 65(c), a party subjected to a preliminary injunction in district court who is later found to have been 'wrongfully enjoined' may recover against the security bond damages suffered as a result of the injunction."); *Parker Tampa Two, Inc. v. Somerset Dev. Corp.*, 544 So. 2d 1018, 1021-22 (Fla. 1989) ("The standard for determining whether an injunction was wrongfully issued is simply whether the petitioning party was unentitled to injunctive relief."); *Hay v. Baumgartner*, 903 N.E.2d 1044, 1047 (Ind. Ct. App. 2009) ("Where a temporary injunction is dissolved and not replaced by a permanent injunction, the enjoined party is generally entitled to compensation for the damages it incurred." (internal quotation marks and citation omitted)); *Webb v. Beal*, 1915-NMSC-030, ¶ 9, 20 N.M. 218, 148 P. 487 ("[I]f on investigation it is found that the plaintiff had no just right either in the law or the facts to justify him in asking and obtaining from the court such a harsh and drastic exercise of its authority, he should indemnify the defendant in the language of his bond for all damages he might sustain[.]" (internal quotation marks and citation omitted)).

**{14}**    However, in cases where the trial court did not require the plaintiff to post security, courts continued to adhere to the historical practice of denying damages to the wrongfully enjoined. *See, e.g.*, *Meyers v. Block*, 120 U.S. 206, 211 (1887) ("Without a bond for the payment of damages or other obligation of like effect, a party against whom an injunction wrongfully issues can recover nothing but costs, unless he can make out a case of malicious prosecution. It is only by reason of the bond, and upon the bond, that he can recover anything."); *Robinson v. Kellum*, 6 Cal. 399, 400 (1856) ("An action on the case will not lie for improperly suing out an injunction, unless it is charged in the declaration as an abuse of the process of the [c]ourt through malice, and without probable cause. If the act complained of is destitute of these ingredients, then the only remedy of the injured party is an action upon the injunction bond[.]"); *Manlove v. Vick*, 55 Miss. 567, 569 (1878) ("It is well settled, both at common law and under statutory provisions requiring the giving of bonds as conditions precedent to obtaining certain statutory writs, that no action can be maintained against the party issuing the writs, except by showing malice and want of probable cause in their issuance."); *Iron Mountain Bank v. Mercantile Bank*, 4 Mo. App. 505, 506 (1877) ("There can be no recovery of damages arising from a[ wrongful] injunction, except in an action on the bond, unless it be averred and shown that the process of the court was abused maliciously and without probable cause."); *City of Yonkers v. Fed. Sugar Ref. Co.*, 221 N.Y. 206, 208 (1917) ("There was no liability at common law for damages resulting from an injunction erroneously granted unless the case was one of malicious prosecution."). To hold otherwise, as one scholar observed, would be "tantamount to permitting a malicious[]prosecution action against a plaintiff without allowing him the usual common[]law shields of good faith and probable cause." *Interlocutory Injunctions and the Injunction Bond*, *supra*, at 343-44. This appears to remain the general rule today in

every jurisdiction that has addressed the question. *See generally*, Annotation, *Liability Apart From Bond and in Absence of Elements of Malicious Prosecution for Wrongfully Suing out Injunction*, 45 A.L.R. 1517 (Originally published in 1926) (collecting cases on the subject and observing that "[i]n the absence of the elements of an action for malicious prosecution, it is established by the great weight of authority that no action will lie by the defendant in an injunction suit, independently of bond or undertaking, for damages for the wrongful suing out of the injunction").

**The Commission Cannot Recover Damages in the Absence of an Injunction Bond**

**{15}** The Commission cannot point to, and we cannot find, a New Mexico case permitting a wrongfully enjoined defendant to recover damages despite the lack of an injunction bond. While no New Mexico court has had the opportunity to decide this issue, our Court has previously appeared to acknowledge the common law rule that a wrongfully enjoined defendant cannot recover damages in the absence of a bond. In *Insure N.M., LLC v. McGonigle*, 2000-NMCA-018, 128 N.M. 611, 995 P.2d 1053, the district court granted the plaintiff a TRO and preliminary injunction prohibiting the defendant from soliciting specific customers of the plaintiff. *Id.* ¶ 5. After a final hearing on the merits of the case, the district court dissolved the preliminary injunction and denied the plaintiff's request for a permanent injunction. *Id.* The defendant cross-appealed the district court's grant of the preliminary injunction. *Id.* ¶¶ 1, 26. On appeal, we determined that the defendant's cross appeal was moot because the district court properly dissolved the preliminary injunction and denied the permanent injunction. *Id.* ¶ 26. Additionally, while it is unclear from the opinion, it appeared that the district court did not require the plaintiff to post an injunction bond because the defendant requested that we "remind the [district] court that temporary injunctions where there is a potential for damages if the injunction is wrongful normally should require a bond to protect the parties that may be harmed by the improper injunction." *Id.* ¶ 27 (internal quotation marks omitted). Although we declined the defendant's request in the absence of a justiciable issue, we noted the defendant's acknowledgment of a "lack of a remedy." *Id.*

**{16}** We make clear today what we appeared to accept as truth in *McGonigle*: a wrongfully enjoined defendant may only recover damages if the plaintiff was required to post an injunction bond. If the district court did not require the plaintiff to provide a bond, the defendant's only alternative is to bring an action for malicious abuse of process. The common law provides no other avenue for redress.

**{17}** The Commission argues that the lack of a bond is not determinative and relies on *Monroe Divison, Litton Business Systems, Inc. v. De Bari*, 562 F.2d 30 (10th Cir. 1977), for the proposition that the district court's failure to require an injunction bond does not prevent a defendant from recovering damages. In that case, the federal district court issued a preliminary injunction barring the defendant from competing with the plaintiff, a division of a conglomerate of companies. *Id.* at 31. When the defendant moved for the posting of security, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the federal counterpart to Rule 1-066, the plaintiff argued that it did not need to provide security because it was "a corporation which ha[d] sufficient assets to assure its ability

to pay damages." *De Bari*, 562 F.2d at 31. The district court denied the defendant's motion to post bond. *Id.* at 31. After a trial on the merits, the district court found that that the injunction was overly broad. *Id.* at 32. The defendant then moved to "enforce liability on the wrongful preliminary injunction," which the district court denied. *Id.* On appeal, the plaintiff argued, "[A]bsent a security bond, there is no liability for damages or restitution because of a wrongful injunction unless the circumstances give rise to a claim for malicious prosecution." *Id.* The Tenth Circuit disagreed. The court acknowledged Tenth Circuit precedent in which it held that "the security requirement of Rule 65 gave the trial judge a discretion to dispense with a security bond when the applicant for the injunction had 'considerable assets' and was 'able to respond in damages.' " *De Bari*, 562 F.2d at 32 (citing *Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 782-83 (10th Cir. 1964)). However, the court stated, "Rule 65 mandates security for the protection of the person enjoined. That protection is not eliminated when the court relies on the financial strength of the party seeking the injunction in place of the security of a bond." *De Bari*, 562 F.2d at 32 (citation omitted). Consequently, the appeals court held that, even though the district court failed to comply with the security requirement of Rule 65, "[t]he [district] court's violation of this rule does not destroy the defendant's right to recover for a wrongful preliminary injunction." *De Bari*, 562 F.2d at 32.

**{18}** The Commission's reliance on *De Bari* is misplaced. First, Tenth Circuit decisions are not binding on our Court. *See Moongate Water Co. v. Doña Ana Mut. Domestic Water Consumers Ass'n*, 2008-NMCA-143, ¶ 20, 145 N.M. 140, 194 P.3d 755 (stating that "we are not bound by the analyses or conclusions" of federal cases). Second, the facts of *De Bari* are distinguishable. Unlike *De Bari*, Plaintiff did not argue that he should not have to post a bond because he had substantial assets to assure his ability to cover the Commission's potential damages. *See De Bari*, 562 F.2d at 31. To the contrary, when asked if he could afford to post security, Plaintiff stated that the most he could provide for a cash bond was $500. Thus, this is not a case where the plaintiff sought to avoid liability under a bond by capitalizing on his financial strength. Furthermore, we question the vitality of *De Bari*'s holding. While *De Bari* has yet to be overruled, the United States Supreme Court has since stated in absolute terms, albeit in dicta, that "[a] party injured by the issuance of an injunction later determined to be erroneous *has no action for damages in the absence of a bond*." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 770 n.14 (1983) (emphasis added); *see Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 597, n.2 (1984) (stating that "the city would have no claim for reimbursement against respondents for securing an allegedly erroneous injunction [because no bond was posted for the preliminary injunction]"); *see also Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989) (citing *De Bari* and noting that "[c]ourts that have waived the bond requirement have apparently assumed that, should the plaintiff later lose on the merits, the defendant may recover the damages inflicted by the injunction. That assumption was rendered doubtful, however, by the Supreme Court's declaration in *W.R. Grace & Co.*"); James T. Carney, *Rule 65 & Judicial Abuse of Power: A Modest Proposal for Reform*, 19 Am. J. *Trial Advoc.* 87, 116 (1995) (discussing *De Bari* and noting that "if the Supreme Court's dicta in *W.R. Grace & Co.*[] is correct, then no

recovery may be had for the issuance of wrongful injunction if no bond is posted"). Therefore, we decline to rely on *De Bari*.

**{19}**     The Commission also cites cases from other jurisdictions recognizing exceptions to the general rule allowing courts to award damages when the plaintiff did not post an injunction bond. *See, e.g.*, *Cagan v. Mut. Benefit Life Ins. Co.*, 28 F.3d 654, 656 (7th Cir. 1994) (stating that "in all but exceptional cases the lack of an injunction bond means the unavailability of damages for wrongful injunction"). However, the Commission fails to argue how one of these exceptions applies to the present case. Therefore, we decline to address whether our courts should recognize any such exceptions to the general rule we recognize today.

**{20}**     Because we conclude that the district court cannot grant damages for a wrongful injunction in the absence of an injunction bond, the district court had no authority to grant the Commission damages in the form of attorney fees. Hence, the district court abused its discretion. As the Commission has no remedy apart from an independent action for malicious abuse of process, we need not determine whether the injunction was wrongful or whether assessing attorney fees against Plaintiff would contravene the public policy of the OMA. *See McGonigle*, 2000-NMCA-018, ¶¶ 26-27 (refusing to issue an advisory opinion where the defendant's claim was moot).

**CONCLUSION**

**{21}**     In sum, we hold that a district court cannot grant damages for a wrongful injunction in the absence of an injunction bond. In such cases, the wrongfully enjoined defendants' only remedy is to pursue an independent action for malicious abuse of process. Accordingly, we reverse the district court's order granting attorney fees to the Commission.

**{22}    IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**BRIANA H. ZAMORA, Judge**